1  ALEXANDER B. CVITAN (SBN 81746)
   E-mail: alc@rac-law.com
2  MARSHA M. HAMASAKI (SBN 102720)
   E-mail: marshah@rac-law.com;
3  PETER A. HUTCHINSON (SBN 225399), and
   E-mail: peterh@rac-law.com,
4  REICH, ADELL & CVITAN, A Professional Law Corporation
   3550 Wilshire Blvd., Suite 2000
5  Los Angeles, California 90010-2421
   Telephone: (213) 386-3860; Facsimile: (213) 386-5583
6  Attorneys for Plaintiff

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11 CONSTRUCTION LABORERS            CASE NO.:
   TRUST FUNDS FOR SOUTHERN
12 CALIFORNIA ADMINISTRATIVE
   COMPANY, a Delaware limited
13 liability company,               COMPLAINT FOR:

14              Plaintiff,          **1. MONETARY DAMAGES DUE TO
                                       EMPLOYEE BENEFIT PLANS
15        v.                           PURSUANT TO COLLECTIVE
                                       BARGAINING AND PLAN TRUST
16 MEK ENTERPRISES, INC., a            AGREEMENTS**
   California corporation also known as
17 and doing business as MEK, MEK   **2. MONETARY DAMAGES FOR
   ENTERPRISES, MEK                     BREACH OF FIDUCIARY
18 CONTRACTING, and 4 MEK              DUTIES**
   ENTERPRISE INC., and formerly
19 known as MEK ENTERPRISES,        **3. MONETARY DAMAGES DUE TO
   LLC; MEK ENTERPRISES GOV.,          EMPLOYEE BENEFIT PLANS
20 INC., a Delaware Corporation; also   THROUGH ENFORCEMENT OF
   known as and doing business as       LICENSE BOND**
21 MEK, MEK ENTERPRISES, MEK
   CONTRACTING, and 4 MEK         **4. MONETARY DAMAGES DUE TO
22 Enterprise Inc.; MARC KRANZ, an     EMPLOYEE BENEFIT PLANS
   individual; MARILYN ROSELA, an      THROUGH ENFORCEMENT OF
23 individual also known as Marilyn     PAYMENT BONDS**
   Kranz and Marilyn Rosela Kranz;
24 AMERICAN CONTRACTORS          **5. MONETARY DAMAGES DUE TO
   INDEMNITY COMPANY, a              EMPLOYEE BENEFIT PLANS
25 California corporation; LIBERTY     THROUGH ENFORCEMENT OF
   MUTUAL INSURANCE                   STOP PAYMENT NOTICES**
26 COMPANY, a Massachusetts
   corporation; ARCH INSURANCE   **6. SPECIFIC PERFORMANCE OF
27 COMPANY, a Missouri corporation;    OBLIGATION TO PRODUCE
   STATE NATIONAL INSURANCE          RECORDS FOR AUDIT**
28 COMPANY, INC., a Texas

317370v7                            1

corporation; SOLPAC
CONSTRUCTION, INC., a
California corporation also doing
business as SOLTEK PACIFIC
CONSTRUCTION COMPANY;
USS CAL. BUILDERS, INC., a
California corporation; BUILT
PACIFIC, INC., a California
corporation; SAN DIEGO UNIFIED
SCHOOL DISTRICT, a public
agency,

Defendants.

7. **INJUNCTIVE RELIEF COMPELLING SUBMISSION OF FRINGE BENEFIT CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS**

[29 U.S.C. §§ 185, 1105, 1109, 1132(a)(3), 1132(g)(2), 1145; 28 U.S.C. § 1367(a)]

Plaintiff, Construction Laborers Trust Funds for Southern California Administrative Company, a Delaware limited liability company, alleges:

## INTRODUCTION

1.     This action is brought by a fiduciary administrator on behalf of employee benefit plans against: two related employers; the license bond surety of one of them; payment bond sureties; general contractors of the employers to whom the payment bonds were issued; and a public agency on whose projects the employers performed work.  It is brought in accordance with the terms and conditions of the plans, the collective bargaining agreements to which the employers are bound, the license bond, the general contractors' payment bonds and applicable statutes to: (a) recover unpaid monthly employee fringe benefit contributions and related damages due to the plans by the employers, including through enforcement of the terms of the collective bargaining agreements and the plans (Claim 1), statutes and regulations related to fiduciary liability under the Employee Retirement Income Security Act (Claim 2), the license bond (Claim 3), the payment bonds (Claims 4 to 8), and stop payment notices (Claims 9 to 13); (b) compel the employers to produce records for an audit to determine if additional amounts are due (Claim 14); and

1   (c) compel the employers to timely and fully report and pay their monthly fringe

2   benefit contributions to the plans on behalf of their employees (Claim 15).

3

4   **JURISDICTION AND VENUE**

5

6   2.   This Court has jurisdiction over Claims 1, 14 and 15 pursuant to:

7   sections 502(g)(2) and 515 of the Employee Retirement Income Security Act

8   (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of

9   ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor

10  Management Relations Act (LMRA) (codified at 29 U.S.C. § 185).  This Court has

11  jurisdiction over Claim 2 of this complaint pursuant to ERISA sections 502(a)(3),

12  405 and 409(a), codified at 29 U.S.C. §§ 1132(a)(3), 1105 and 1109(a).  This Court

13  has supplemental jurisdiction over Claims 3 through 13 of this complaint pursuant to

14  28 U.S.C. § 1367(a).  Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C.

15  § 1132(e)(2)), venue is proper in this district because the plans are administered in

16  this district.

17

18  **PARTIES**

19

20  3.   Plaintiff ("ADMINCO") is an administrator of, agent for collection for, a

21  fiduciary to, and brings this action on behalf of, the following employee benefit

22  plans: Laborers Health and Welfare Trust Fund for Southern California; San Diego

23  County Laborers' Pension Trust Fund; Construction Laborers Vacation Trust for

24  Southern California; Laborers Training and Re-Training Trust Fund for Southern

25  California; Center for Contract Compliance; Laborers Contract Administration Trust

26  Fund for Southern California; Laborers' Trusts Administrative Trust Fund for

27  Southern California; and San Diego Construction Advancement Fund 2003

28  (collectively "Trust Funds").  Each of the Trust Funds is an express trust created by

317370v7                                    3

written agreement, an employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)). Each of the Trust Funds exists pursuant to ERISA and section 302 of the LMRA (29 U.S.C. § 186). ADMINCO and the Trust Funds' principal places of business are in the County of Los Angeles, State of California.

4.      ADMINCO is informed and believes, and on that basis alleges, that defendant MEK Enterprises, Inc. ("MEK"): is a corporation organized and existing under the laws of the State of California that is also known as and does business as MEK, MEK Enterprises, MEK Contracting, and 4 MEK Enterprise Inc., and was formerly known as MEK Enterprises, LLC; has a principal place of business in the City of San Diego, County of San Diego, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

5.      ADMINCO is informed and believes, and on that basis alleges, that defendant MEK Enterprises Gov, Inc. ("MEK GOV"): is a corporation organized and existing under the laws of the State of Delaware that is also known as and does business as MEK, MEK Enterprises, MEK Contracting, and 4 MEK Enterprise Inc.; has a principal place of business in the City of San Diego, County of San Diego, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

6.      ADMINCO is informed and believes, and on that basis alleges, that defendant Marc Kranz ("FIRST MANAGING AGENT") is an individual who resides in the County of San Diego, State of California who is, and has been at all relevant times, including since at least December 2012, a managing agent of MEK

and MEK GOV, including specifically: chief executive officer [from CA SOS], secretary [from CA SOS], chief financial officer [from CA SOS] and agent for service of process [from CA SOS] of MEK; and Chief Executive Officer [from see case notes file] of MEK GOV.

7.     ADMINCO is informed and believes, and on that basis alleges, that defendant Marilyn Rosela ("SECOND MANAGING AGENT") is an individual who is also known as Marilyn Kranz and Marilyn Rosela Kranz who resides in the County of San Diego, State of California who is, and has been at all relevant times, including since at least December 2012, a managing agent of MEK and MEK GOV, including specifically: Human Resources Director [see case notes file] of MEK; and President [from CA SOS, CSLB, see also case notes file], Chief Executive Officer [from CSLB], Agent for Service of Process [from CA SOS] and Human Resources Director [see case notes file] of MEK GOV.  Where referred to collectively in this complaint, the FIRST MANAGING AGENT and SECOND MANAGING AGENT are referred to as the "MANAGING AGENTS."

8.     ADMINCO is informed and believes, and on that basis alleges, that defendant American Contractors Indemnity Company ("LICENSE BOND SURETY") is a California corporation that is licensed and authorized to perform and transact a surety business in the State of California, which has a principal place of business in the city of Los Angeles, County of Los Angeles, State of California, and which does, or at all relevant times did, conduct business in California as a surety.

9.     ADMINCO is informed and believes, and on that basis alleges, that defendant Liberty Mutual Insurance Company (LIBERTY PB SURETY) is a Massachusetts corporation that is licensed and authorized to perform and transact a surety business in the State of California, which has a principal place of business in

the city of Boston, State of Massachusetts, and which does, or at all relevant times did, conduct business in California as a surety.

10.     ADMINCO is informed and believes, and on that basis alleges, that defendant Arch Insurance Company (ARCH PB SURETY) is a Missouri corporation that is licensed and authorized to perform and transact a surety business in the State of California, which has a principal place of business in the city of Jersey City, State of New Jersey, and which does, or at all relevant times did, conduct business in California as a surety.

11.     ADMINCO is informed and believes, and on that basis alleges, that defendant State National Insurance Company, Inc. (STATE NATIONAL PB SURETY) is a Texas corporation that is licensed and authorized to perform and transact a surety business in the State of California, which has a principal place of business in the city of Bedford, State of Texas, and which does, or at all relevant times did, conduct business in California as a surety.

12.     ADMINCO is informed and believes, and on that basis alleges, that defendant Solpac Construction, Inc. (GC SOLPAC): is a corporation organized and existing under the laws of the State of California that does business as Soltek Pacific Construction Company; has a principal place of business in the City of San Diego, County of San Diego, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

13.     ADMINCO is informed and believes, and on that basis alleges, that defendant USS Cal. Builders, Inc. (GC CAL BUILDERS): is a corporation organized and existing under the laws of the State of California; has a principal place

1    of business in the City of Stanton, County of Orange, State of California; and does,

2    or at all relevant times did, business in the State of California as a construction

3    contractor in an industry affecting interstate commerce.

4

5         14.    ADMINCO is informed and believes, and on that basis alleges, that

6    defendant Built Pacific, Inc. (GC BUILT PACIFIC): is a corporation organized and

7    existing under the laws of the State of California; has a principal place of business in

8    the City of San Diego, County of San Diego, State of California; and does, or at all

9    relevant times did, business in the State of California as a construction contractor in

10   an industry affecting interstate commerce.

11

12        15.    ADMINCO is informed and believes, and on that basis alleges, that

13   defendant San Diego Unified School District ("AGENCY") is a "Public Entity," as

14   defined in California Civil Code ("Civil Code") § 8036, in the County of San Diego,

15   State of California.

16

17                             **PROJECTS**

18

19        16.    ADMINCO is informed and believes, and on that basis alleges, that the

20   AGENCY entered into a contract with GC SOLPAC for a public work of

21   improvement for construction, alteration, demolition, installation or repair in San

22   Diego County, California, paid in whole or in part out of public funds, identifiable as

23   the Whole Site Modernization at Taft Middle School ("Taft Project").  ADMINCO is

24   informed and believes, and on that basis alleges, that the AGENCY has an

25   ownership interest in the real property on which the Taft Project was performed

26   ("Taft "Property").

27

28        17.    ADMINCO is informed and believes, and on that basis alleges, that the

AGENCY entered into a contract with GC SOLPAC for a public work of improvement for construction, alteration, demolition, installation or repair in San Diego County California, paid in whole or in part out of public funds, identifiable as Whole Site Modernization and HVAC at Monroe Clark Middle School ("Monroe Clark Project"). ADMINCO is informed and believes, and on that basis alleges, that the AGENCY has an ownership interest in the real property on which the Monroe Clark Project was performed ("Monroe Clark Property").

18.   ADMINCO is informed and believes, and on that basis alleges, that the AGENCY entered into a contract with GC CAL BUILDERS for a public work of improvement for construction, alteration, demolition, installation or repair in San Diego County California, paid in whole or in part out of public funds, identifiable as the Whole Site Modernization at Hancock Elementary School ("Hancock Project"). ADMINCO is informed and believes, and on that basis alleges, that the AGENCY has an ownership interest in the real property on which the Hancock Project was performed ("Hancock Property").

19.   ADMINCO is informed and believes, and on that basis alleges, that the AGENCY entered into a contract with GC CAL BUILDERS for a public work of improvement for construction, alteration, demolition, installation or repair in San Diego County California, paid in whole or in part out of public funds, identifiable as Whole Site Modernization and Interim Housing at Longfellow K-8 School ("Longfellow Project"). ADMINCO is informed and believes, and on that basis alleges, that the AGENCY has an ownership interest in the real property on which the Longfellow Project was performed ("Longfellow Property").

20.   ADMINCO is informed and believes, and on that basis alleges, that the AGENCY entered into a contract with GC BUILT PACIFIC for a public work of

improvement for construction, alteration, demolition, installation or repair in San Diego County California, paid in whole or in part out of public funds, identifiable as Remodel Workshop for CCTE Fabrication and Design Lab at University City High School ("University Project").  ADMINCO is informed and believes, and on that basis alleges, that the AGENCY has an ownership interest in the real property on which the University Project was performed ("University Property").

21.    Where referenced collectively hereinafter, the aforementioned projects are referred to collectively as the "Projects."  ADMINCO is informed and believes, and on that basis alleges, that each of the Projects is a "public works" as defined in California Labor Code ("Labor Code") § 1720, and that the contracts between the AGENCY and the general contractor to perform work on it is a "public works contract" as defined in Civil Code § 8038 and California Public Contract Code § 1101.  Pursuant to Labor Code § 1771, the "general prevailing rate of per diem wages" must be paid to all workers employed on the Projects.

## AGREEMENTS; JOINT LIABILITY OF MEK AND MEK GOV; LICENSE BOND

22.    The Board of Education of the AGENCY and the San Diego Building and Construction Trades Council and its signatory Craft Unions entered into a written collective bargaining agreement known as a project stabilization agreement covering construction work for the AGENCY ("Project Stabilization Agreement"). The Project Stabilization Agreement incorporates by reference the collective bargaining agreements of the various labor unions that are signatory to it, including certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local Unions (collectively "Laborers Union") known as the Construction Master Labor Agreements, including, specifically, one known as

San Diego Master Labor Agreement ("Master Labor Agreement"). Pursuant to the Construction Master Labor Agreements, employers become bound to the terms and conditions of the various trust agreements that created each of the Trust Funds ("Trust Agreements"). When referenced collectively hereinafter, the Project Stabilization Agreement, Construction Master Labor Agreements and Trust Agreements are referred to as "the Agreements."

23. ADMINCO is informed and believes, and that basis alleges, that the Project Stabilization Agreement is applicable to the Projects and MEK and MEK GOV's work on the Projects. ADMINCO is further informed and believes, and on that basis alleges, that at all relevant times, including since at least December 2012, MEK and MEK GOV have expressly acknowledged, and agreed to, their obligation to abide the terms of the Project Stabilization Agreement for work on the Projects, including by at least the following. First, MEK executed a series of letters of assent expressly agreeing to be bound by the Project Stabilization Agreement (including also the Construction Master Labor Agreements and Trust Agreements incorporated by reference). Second, in and by execution of a document entitled *Subscription Agreement to Construction Laborers Trust Fund for Southern California and San Diego Laborers Pension Trust Fund for SDUSD Contractors*, "MEK Enterprises" agreed to be bound to the Trust Agreements, including specifically the requirement to remit monthly fringe benefit contributions ("Monthly Contributions") to the Trust Funds on behalf of its employees. The Monthly Contribution requirement is further described below. Third, MEK, MEK GOV and "MEK Enterprises" acknowledged the applicability of the Project Stabilization Agreement (including also the Construction Master Labor Agreements and Trust Agreements incorporated by reference), and agreed to its terms, in and by execution of agreements with their general contractors for work on some or all of the Projects. Fourth, the MANAGING AGENTS requested that one or more employees be dispatched from a

Laborers Union local pursuant to the Construction Master Laborer Agreements.

24.     ADMINCO is informed and believes, and on that basis alleges, that in their business operations on the Projects - including but not limited to the execution of legal documents, identification of employee work information on certified payroll required by law, and in communications - the MANAGING AGENTS represented their business alternately to be as MEK, MEK GOV and, generically, "MEK Enterprises," including at least the following.  First, on the Monroe Clark Project, the letter of assent was executed by MEK but the subcontract with GC SOLPAC was executed by MEK.  Moreover, the certified payroll records thereafter prepared and submitted by the MANAGING AGENTS alternately identified the employer as MEK and MEK GOV.  Second, on the University Project, the letter of assent was executed by MEK, but the subcontract was interlineated so as to be executed by MEK GOV.  Third, on the remaining Projects, certified payroll records alternately identified the employer as MEK and MEK GOV.  Fourth, the MANAGING AGENTS executed agreements, and represented themselves in other instances on the Projects, simply as "MEK Enterprises." Fifth, ADMINCO is informed and believes, and on that basis alleges, that MEK does not, and did not at any time, have a license to perform construction work, but instead used MEK GOV's contractor's license number on the Projects regardless of whether they represented their business  to MEK GOV, MEK or "MEK Enterprises."

25.     SUCCESSORSHIP:  ADMINCO is informed and believes, and on that basis alleges, that there exists, and at all times existed, a substantial continuity of the business operations of MEK and MEK GOV where work was alternately performed, or represented to be performed, by MEK and MEK GOV.  ADMINCO is further informed and believes, and on that basis alleges, that in alternately representing MEK and MEK GOV to be the entity bound to agreements and performing work,

1  including on single Projects, MEK and MEK GOV each assumed the obligations of

2  each and both of them.

3

4      26.    ADMINCO is informed and believes, and on that basis alleges, that after

5  the MANAGING AGENTS' business (regardless of whether portrayed as MEK,

6  MEK GOV or "MEK Enterprises") provided the same services with the same or

7  essentially the same work force under the same working conditions using the same

8  equipment and methods and the same supervisors.  SINGLE ER/ALTER EGO:

9  ADMINCO is also informed and believes, and on that basis alleges, that there is and

10 at all relevant times was, including but not limited to during the times periods of

11 work the MEK and MEK GOV on the Projects, an interrelation of operations,

12 common management and centralized control of labor relations between, and

13 common ownership of, MEK and MEK GOV.  ADMINCO is further informed and

14 believes, and on that basis alleges, that the MANAGING AGENTS portrayed MEK

15 and MEK GOV as separate entities in order to fraudulently avoid obligations under

16 the Construction Master Labor Agreements, including the obligations to submit

17 Monthly Reports and Contributions, described below, to the Trust Funds.

18

19     27.    JOINT ER:  ADMINCO is informed and believes, and on that basis

20 alleges, that both MEK and MEK GOV are common law employers within the

21 which share or codetermine matters governing the essential terms and conditions of

22 employment of their employees, including but not limited to: supervision and

23 direction of employees; wages and hours; dictating the number of workers to be

24 supplied; controlling scheduling, seniority, and overtime; and assigning work and

25 determining the manner and method of work performance.

26

27     28.    Based on information and belief, including but not limited to the

28 allegations set forth in paragraphs 22 through 27 above, ADMINCO alleges that

317370v7

12

1   MEK and MEK GOV, as well as "MEK Enterprises" to any extent a separate entity

2   by that name exists, are bound to the terms of the Agreements and jointly and

3   severally liable for the obligations and debts of each and all of them, including those

4   arising from the Agreements (and specifically those related to the Trust Funds),

5   because they are not separate entities, but are a single business, joint employers, alter

6   egos and/or successors of one another.  In addition, the Master Labor Agreement

7   provides that: (a) it is binding upon an employer regardless of whether the employer

8   changes its name; (b) an employer under its terms shall include any firm,

9   partnership, company, corporation or other business organization in which the

10  employer has a majority ownership interest; (c) an employer under its terms shall

11  continue to be bound to it under the new name or method of operation, including a

12  corporation in which it has majority control or interest; and (d) for purposes of

13  delinquency to the Trust Funds, a contractor bound to the Agreement includes "all

14  entities of the delinquent employer, change of name, or change of entity, provided

15  that the delinquent employer holds at least ten (10%) percent ownership in the new

16  entity."  Based on the allegations regarding the relationship between MEK and MEK

17  GOV set forth herein, including but not limited to those in paragraphs 22 through 27

18  above, ADMINCO alleges that MEK and MEK GOV, as well as "MEK Enterprises"

19  to any extent a separate entity by that name exists, are also jointly and severally

20  liable of for the obligations and debts of each and all of them, including those arising

21  from the Agreements (and specifically those related to the Trust Funds), under the

22  terms of the Agreements.

23

24      29.    COLATERAL ESTOPPEL/RES JUDICATA: An arbitration award was

25  issued in favor of the Laborers Union jointly against MEK and MEK GOV for

26  unpaid wages and fringe benefit contributions ("Monthly Contributions"), including

27  certain of the Monthly Contributions sought by ADMINCO in this action, based on

28  an interpretation of the Master Labor Agreement.  The type of work at issue in the

1    arbitration is the same as that in this action.  Thus MEK and MEK GOV are
2    collaterally estopped from asserting that they are not jointly liable for unpaid
3    contributions for the type of work at issue and that such work is subject to the terms
4    of the Master Labor Agreement.  Further, to the extent that the amounts sought
5    against MEK and MEK GOV are also encompassed by the arbitration award, they
6    are established to be due in this cased based on *res judicata*.

7

8        30.    Based on the allegations of joint and several liability set forth herein,
9    including in paragraphs 22 through 29, MEK and MEK GOV are referred to
10   collectively hereinafter as the "MEK ENTITIES" where referenced together.

11

12       31.    Under the terms of the Agreements, employers, including the MEK
13   ENTITIES, are required to submit monthly fringe benefit contributions ("Monthly
14   Contributions") to each of the Trust Funds on behalf of their employees for each
15   hour worked by (or paid for) them for work covered by the Agreements ("Covered
16   Work").

17

18       32.    Under the terms of the Agreements, employers, including the MEK
19   ENTITIES, are required to submit to the Trust Funds, with their Monthly
20   Contributions, monthly reports, itemized by project, listing the names of their
21   employees who performed Covered Work, their Social Security numbers, the hours
22   of Covered Work performed by each, and the resulting Monthly Contributions due
23   for each ("Monthly Reports").  The Trust Funds rely on Monthly Reports – and the
24   accuracy of those reports – to determine the amount of Monthly Contributions due to
25   the Trust Funds by employers and the credit toward fringe benefits to be allocated to
26   their employees.

27

28       33.    The Agreements provide for the payment of interest on delinquent

Monthly Contributions from the date due at a rate set by the trustees of the Trust Funds. The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California. The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)). In addition, employers are required to pay fees for the submission of checks not honored by the banks upon which they are drawn.

34. The failure of employers to pay Monthly Contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify. Apart from the fees and costs incurred in litigation, the harm caused includes the cost of collecting the Monthly Contributions from employers or third parties, the cost of special processing to restore employee fringe benefit credits because of late Monthly Contributions, employee loss of health insurance coverage (even if later restored) and medical harm to participants and beneficiaries who might have foregone medical care when notified that their insurance ceased because of their employer's failure to pay Monthly Contributions. The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the Monthly Contributions for a given month are later paid. It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

35. Under the terms of the Agreements, employers, including the MEK

317370v7

15

ENTITIES, agree to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed.  If an employer subcontracts Covered Work to a non-signatory entity, or allows a subcontractor to subcontract Covered Work to a non-signatory entity, the employer becomes liable to the Trust Funds in at least an amount equal to the Monthly Contributions, interest and liquidated damages that would have been due if a signatory entity had performed the Covered Work.

36.     Under the terms of the Agreements, employers, including the MEK ENTITIES, agree not to subcontract Covered Work to entities that are delinquent to the Trust Funds or to allow lower-tier subcontractors to perform Covered Work if they are so delinquent.  If an employer subcontracts Covered Work to an entity that is delinquent in its Monthly Reports or Monthly Contributions to the Trust Funds, or allows a lower-tier subcontractor that is so delinquent to perform Covered Work, the employer becomes under the terms of the Agreements liable to the Trust Funds for the Monthly Contributions due by the delinquent subcontractor and any delinquent lower-tier subcontractors.

37.     The Agreements provide the Trust Funds with specific authority to examine the payroll and business records of employers, including the MEK ENTITIES, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the Trust Funds.  The Agreements further provide that employers, including the MEK ENTITIES, must maintain records sufficient for the TRUST FUNDS to determine proper Monthly Reporting and the amounts due and must pay the Trust Funds' audit fees if they are delinquent to the Trust Funds.  The Trust Funds have delegated the authority to perform such audits to ADMINCO.

317370v7

16

1    38.    The Agreements require employers to pay the Trust Funds' attorneys'

2    fees and costs of litigation to enforce the Agreements' foregoing terms, including the

3    Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

4

5    39.    ADMINCO is informed and believes, and on that basis alleges, that in

6    order to adhere to California Business and Professions Code § 7071.6(a), MEK GOV

7    obtained a license bond from the LICENSE BOND SURETY in the penal sum

8    required by law and filed it with the Registrar of the California State Contractors

9    License Board.  The bond referenced in this paragraph is referred to hereinafter as

10    the "License Bond."

11

12    **FIRST CLAIM FOR RELIEF**

13    **(Jointly and Severally Against the MEK ENTITIES**

14    **for Monetary Damages Due to Employee Benefit Plans)**

15

16    40.    ADMINCO repeats, realleges and incorporates by reference each and

17    every allegation contained in paragraphs 1 through 39 above as if fully set forth here.

18

19    41.    The MEK ENTITIES have failed to submit Monthly Contributions due

20    by it to the Trust Funds.  Pursuant to the Agreements and sections 502(g)(2) and 515

21    of ERISA (29 U.S.C. §§ 1132(g)(2) and 1145), the MEK ENTITIES owes the Trust

22    Funds a known amount of $51,060.22 for unpaid or late-paid Monthly Contributions

23    and related damages (and/or late-submitted Monthly Reports) for certain or all of the

24    months of January 2013 through July 2017 ("Known Delinquency").  The Known

25    Delinquency consists of: $37,937.47 in unpaid Monthly Contributions; $2,274.61 in

26    interest (through September 19, 2017); $8,979.47 in liquidated damages; and

27    $3,200.00 in audit fees; minus a credit of $1,331.33.

28

42.     ADMINCO will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the Trust Funds by the MEK ENTITIES, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the MEK ENTITIES (or lower-tier subcontractors).  If deemed necessary by the Court, ADMINCO will amend its complaint to add any additional amounts determined to be due.  Any and all conditions to the MEK ENTITIES' obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the Trust Funds have been met.

43.     Under the terms of the Agreements and section $502(g)(2)(D)$ of ERISA (29 U.S.C. § $1132(g)(2)(D)$), ADMINCO is entitled to an award of its attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### (Jointly and Severally Against the MEK ENTITIES and MANAGING AGENTS for Damages for Breach of Fiduciary Duties)

44.     ADMINCO repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 43 above as if fully set forth here

45.     ADMINCO is informed and believes, and on that basis alleges, that the MANAGING AGENTS had discretionary authority or control over the business affairs of the MEK ENTITIES at all times since at least, and including, December 2012, including but not limited to on all of the due dates of the MEK ENTITIES' unpaid Monthly Contributions and other amounts comprising the Known

1   Delinquency.

2

3       46.    ADMINCO is informed and believes, and on that basis alleges, that the

4   MEK ENTITIES' employees performed Covered Work on public works projects in

5   California with respect to which they were entitled to compensation at the prevailing

6   wage rate established by law ("Prevailing Wage Projects").

7

8       47.    ADMINCO is informed and believes, and on that basis alleges, that the

9   MANAGING AGENTS did not pay the MEK ENTITIES' employees the full

10  prevailing wage to which they were entitled for some or all of their Covered Work

11  on Prevailing Wage Projects, but instead deducted the Monthly Contributions due to

12  the Trust Funds for such Covered Work and failed to submit the deducted amounts

13  to the Trust Funds.

14

15      48.    The amounts deducted from the MEK ENTITIES' employees' pay by the

16  MANAGING AGENTS are assets of the Trust Funds, including, without limitation,

17  the Monthly Contributions portion of the Known Delinquency, plus interest at the

18  Trust Funds' plan rate.

19

20      49.    ADMINCO is informed and believes, and on that basis alleges, that in

21  their capacity as an officers or managing agents of the MEK ENTITIES, the

22  MANAGING AGENTS had discretionary authority or control over sufficient,

23  segregable funds to pay the constituent monthly amounts comprising the Known

24  Delinquency to the Trust Funds as they came due or thereafter, as well as to pay any

25  other amounts due by the MEK ENTITIES to the Trust Funds as they came due or

26  thereafter.  Upon information and belief, the MANAGING AGENTS exercised their

27  discretionary authority or control over the business affairs of the MEK ENTITIES,

28  including the disposition of assets in their care or control, by failing to disclose

317370v7                              19

1  Covered Work performed by the MEK ENTITIES' employees on Monthly Reports
2  and by failing to submit the amounts comprising the Known Delinquency to the
3  Trust Funds.

4

5       50.    By their discretionary authority or control over the management or
6  disposition of assets of the Trust Funds comprised of the Known Delinquency and
7  any other amounts that came due by the MEK ENTITIES to the Trust Funds, the
8  MANAGING AGENTS (and the MEK ENTITIES) are fiduciaries of the Trust
9  Funds within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

10

11       51.    ADMINCO is informed and believes, and on that basis alleges, that by
12  commingling funds comprising the Known Delinquency (and any other amounts due
13  to the Trust Funds) with other assets, using those funds for purposes other than
14  contributing to the Trust Funds, failing to exercise requisite care, skill, prudence and
15  diligence with respect to those funds, and dealing with those funds in the interest, or
16  for the account, of a person or entity other than the Trust Funds, the MANAGING
17  AGENTS (and the MEK ENTITIES) breached their fiduciary duties to the Trust
18  Funds within the meaning of sections 404(a)(1)(A), (B) and (D), and 406(a) and (b),
19  of ERISA, 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D), and 1106(a) and (b).  Further,
20  under section 405 of ERISA, 29 U.S.C. § 1105, the MANAGING AGENTS and the
21  MEK ENTITIES are jointly liable for the breaches of each of them.

22

23       52.    Pursuant to section 409 of ERISA, 29 U.S.C. § 1109, the MANAGING
24  AGENTS and the MEK ENTITIES: are liable to the Trust Funds for any losses
25  sustained as a result of their breaches; must restore to the Trust Funds any profits
26  made through the use of Trust Funds' assets; and are subject to such other equitable
27  and remedial relief deemed appropriate by this Court.

28

1        53.    ADMINCO is informed and believes, and on that basis alleges, that the

2   Trust Funds have sustained at least the damages comprising the Known Delinquency

3   ($51,060.22 ) in damages as a result of the fiduciary breaches of the MEK

4   ENTITIES and MANAGING AGENTS. The total amount of losses to the Trust

5   Funds sustained as a result of the fiduciary breaches of the MANAGING AGENTS

6   and the MEK ENTITIES, as well as any profits made by the use the Trust Funds'

7   assets, will be established by proof at the time of trial or other dispositive hearing.  If

8   deemed necessary by the Court, ADMINCO will file an amended complaint

9   identifying amounts determined to be due.

10

11        54.    Attorneys' fees and costs are recoverable by ADMINCO pursuant to

12   section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

13

14                  **THIRD CLAIM FOR RELIEF**

15        **(Against the LICENSE BOND SURETY for Monetary Damages**

16             **Through Enforcement of License Bond)**

17

18        55.    ADMINCO repeats, realleges and incorporates by reference each and

19   every allegation contained in paragraphs 1 through 54 above as if fully set forth here.

20

21        56.    The Trust Funds are "Laborers" under California Civil Code ("Civil

22   Code") § 8024(b).  As such, they are beneficiaries of the License Bond under

23   California Business and Professions Code ("Business and Professions Code")

24   § 7071.5(e).

25

26        57.    ADMINCO submitted a claim against the License Bond for Monthly

27   Contributions due by MEK GOV to the Trust Funds ("License Bond Claim").

28   Pursuant to Business and Professions Code §§ 7071.5(e) and 7071.11(a), and, upon

317370v7

1  information and belief, the terms of the License Bond, the LICENSE BOND
2  SURETY is required to pay the Trust Funds up to the penal sum of the License Bond
3  for the failure of its principal, MEK GOV, to remit Monthly Contributions.

5      58.    The LICENSE BOND SURETY has not paid the License Bond Claim as
6  required by the above-referenced statutes, and, upon information and belief, the
7  terms of the License Bond.

9      59.    ADMINCO brings this claim for relief on behalf of the Trust Funds
10  under Business and Professions Code § 7071.11(c)(1) to enforce the terms of the
11  License Bond to recover a portion of the amount due by the MEK ENTITIES to the
12  Trust Funds (up to the penal sum of the License Bond).

14  **FOURTH CLAIM FOR RELIEF**
15  **(Jointly and Severally Against LIBERTY PB SURETY and GC SOLPAC**
16  **for Monetary Damages Through Enforcement of Taft Project Payment Bond)**

18      60.    ADMINCO repeats, realleges and incorporates by reference each and
19  every allegation contained in paragraphs 1 through 59 above as if fully set forth here.

21      61.    ADMINCO is informed and believes, and on that basis alleges, that GC
22  SOLPAC – in the capacity of a "direct contractor" (as defined in Civil Code § 8018)
23  on the Taft Project – subcontracted work to the MEK ENTITIES as "subcontractors"
24  (as defined in Civil Code § 8046) for the performance of Covered Work on the Taft
25  Project.

27      62.    ADMINCO is informed and believes, and on that basis alleges, that
28  LIBERTY PB SURETY issued a payment bond naming GC SOLPAC as principal,

317370v7

1   covering work performed on the Taft Project, including Monthly Contributions due

2   by the MEK ENTITIES to the Trust Funds ("Taft Project Payment Bond").

3

4        63.    ADMINCO is informed and believes, and on that basis alleges, that

5   under the terms of the Taft Project Payment Bond LIBERTY PB SURETY is a

6   guarantor of the compensation that must be remitted to the Trust Funds for Covered

7   Work on the Taft Project, including the amount due by the MEK ENTITIES to the

8   Trust Funds in Monthly Contributions.  The employees of the MEK ENTITIES who

9   performed Covered Work on the Taft Project are among the persons authorized to

10  file a payment bond claim pursuant to Civil Code §§ 9100(a)(1) and (2), and

11  9554(b)(1) and (c).  The Trust Funds are the assignees of the portion of those

12  employees' compensation payable as Monthly Contributions.  The Trust Funds have

13  standing to file and enforce a payment bond claim for such compensation pursuant to

14  Civil Code §§ 8024(b) and (c), 9100(a)(2) and 9554(c).  Pursuant to Civil Code

15  §§ 9300(b)(1) and 9560(e), the Trust Funds – as "Laborers" within the meaning of

16  Civil Code § 8024(b) and (c) – are exempt from the preliminary notice requirements

17  of Civil Code §§ 9300(a) and 9560(a) through (c).

18

19       64.    Under Civil Code § 8154(a) and (c), the Taft Project Payment Bond

20  "shall be construed most strongly against the surety and in favor of all persons for

21  whose benefit the bond is given" and "the sole conditions of recovery on the bond

22  are that the claimant is a person described in [Civil Code section 8400 et seq.] or in

23  [Civil Code] Section 9100, and has not been paid the full amount of the claim."

24

25       65.    On or about March 1, 2017, ADMINCO submitted a claim against the

26  Taft Project Payment Bond for known amounts due by the MEK ENTITIES to the

27  Trust Funds in Monthly Contributions and interest for work by the MEK ENTITIES'

28  employees on the Taft Project, plus interest ("Taft Project Payment Bond Claim").

317370v7                              23

1   The Taft Project Payment Bond Claim was thereafter revised to $13,131.30 in in
2   unpaid Monthly Contributions plus interest thereon at the Trust Funds' plan rate.
3   Interest is due, and continues to accrue, at the rates required by the Agreements, the
4   Taft Project Payment Bond and other law, including but not limited to Labor Code §
5   218.6 and Civil Code § 3287.

6

7   66.   LIBERTY PB SURETY has not honored its obligation under the Taft
8   Project Payment Bond to pay the Taft Project Payment Bond Claim.  ADMINCO
9   brings this claim for relief on behalf of the Trust Funds to recover the Taft Project
10  Payment Bond Claim through the enforcement of the terms of Taft Project Payment
11  Bond.  As the principal on the Taft Project Payment Bond, GC SOLPAC is also
12  liable for the amounts due under the terms of the Taft Project Payment Bond.

13

14  67.   ADMINCO is informed and believes, and on that basis alleges, that
15  LIBERTY PB SURETY's failure to pay the Taft Project Payment Bond Claim is
16  willful.  As a result LIBERTY PB SURETY is required under Labor Code § 203.5 to
17  pay a penalty in an amount equal to 30 days extra compensation for each Laborer
18  Employee with respect to whom the MEK ENTITIES failed to remit Monthly
19  Contributions to the Trust Funds for work performed on the Taft Project.

20

21  68.   ADMINCO seeks enforcement of the Taft Project Payment Bond to
22  recover the amounts due to the Trust Funds for the Covered Work performed by the
23  MEK ENTITIES' employees on the Taft Project, including: the amount of the Taft
24  Project Payment Bond Claim as submitted; additional unpaid Monthly Contributions
25  according to proof; additional interest at the rates required by the Agreements, Taft
26  Project Payment Bond and other law, including but not limited to Labor Code
27  § 218.6 and Civil Code § 3287; costs required by the Agreements, the Taft Project
28  Payment Bond and other law, including but not limited to Labor Code § 218.5;

attorneys' fees to the extent provided by the Agreements, the Taft Project Payment Bond and other law, including but not limited to California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154; and an amount equal to 30 days extra compensation for each employee with respect to whom the MEK ENTITIES failed to remit Monthly Contributions to the Trust Funds for work performed on the Taft Project, as a penalty under California Labor Code § 203.5.

## FIFTH CLAIM FOR RELIEF

**(Jointly and Severally Against LIBERTY PB SURETY and GC SOLPAC for Monetary Damages Through Enforcement of Monroe Clark Project Payment Bond)**

69.   ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 68 above as if fully set forth here.

70.   ADMINCO is informed and believes, and on that basis alleges, that GC SOLPAC – in the capacity of a "direct contractor" (as defined in Civil Code § 8018) on the Monroe Clark Project – subcontracted work to the MEK ENTITIES as "subcontractors" (as defined in Civil Code § 8046) for the performance of Covered Work on the Monroe Clark Project.

71.   ADMINCO is informed and believes, and on that basis alleges, that LIBERTY PB SURETY issued a payment bond naming GC SOLPAC as principal, covering work performed on the Monroe Clark Project, including Monthly Contributions due by the MEK ENTITIES to the Trust Funds ("Monroe Clark Project Payment Bond").

72.   ADMINCO is informed and believes, and on that basis alleges, that

317370v7                                    25

under the terms of the Monroe Clark Project Payment Bond LIBERTY PB SURETY is a guarantor of the compensation that must be remitted to the Trust Funds for Covered Work on the Monroe Clark Project, including the amount due by the MEK ENTITIES to the Trust Funds in Monthly Contributions. The employees of the MEK ENTITIES who performed Covered Work on the Monroe Clark Project are among the persons authorized to file a payment bond claim pursuant to Civil Code §§ 9100(a)(1) and (2), and 9554(b)(1) and (c). The Trust Funds are the assignees of the portion of those employees' compensation payable as Monthly Contributions. The Trust Funds have standing to file and enforce a payment bond claim for such compensation pursuant to Civil Code §§ 8024(b) and (c), 9100(a)(2) and 9554(c). Pursuant to Civil Code §§ 9300(b)(1) and 9560(e), the Trust Funds – as "Laborers" within the meaning of Civil Code § 8024(b) and (c) – are exempt from the preliminary notice requirements of Civil Code §§ 9300(a) and 9560(a) through (c).

73.     Under Civil Code § 8154(a) and (c), the Monroe Clark Project Payment Bond "shall be construed most strongly against the surety and in favor of all persons for whose benefit the bond is given" and "the sole conditions of recovery on the bond are that the claimant is a person described in [Civil Code section 8400 et seq.] or in [Civil Code] Section 9100, and has not been paid the full amount of the claim."

74.     On or about March 1, 2017, ADMINCO submitted a claim against the Monroe Clark Project Payment Bond for known amounts due by the MEK ENTITIES to the Trust Funds in Monthly Contributions and interest for work by the MEK ENTITIES' employees on the Monroe Clark Project, plus interest ("Monroe Clark Project Payment Bond Claim"). The Monroe Clark Project Payment Bond Claim was thereafter revised to $10,391.04 in in unpaid Monthly Contributions plus interest thereon at the Trust Funds' plan rate. Interest is due, and continues to accrue, at the rates required by the Agreements, the Monroe Clark Project Payment

Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

75.     LIBERTY PB SURETY has not honored its obligation under the Monroe Clark Project Payment Bond to pay the Monroe Clark Project Payment Bond Claim.  ADMINCO brings this claim for relief on behalf of the Trust Funds to recover the Monroe Clark Project Payment Bond Claim through the enforcement of the terms of Monroe Clark Project Payment Bond.  As the principal on the Monroe Clark Project Payment Bond, GC SOLPAC is also liable for the amounts due under the terms of the Monroe Clark Project Payment Bond.

76.     ADMINCO is informed and believes, and on that basis alleges, that LIBERTY PB SURETY's failure to pay the Monroe Clark Project Payment Bond Claim is willful.  As a result LIBERTY PB SURETY is required under Labor Code § 203.5 to pay a penalty in an amount equal to 30 days extra compensation for each Laborer Employee with respect to whom the MEK ENTITIES failed to remit Monthly Contributions to the Trust Funds for work performed on the Monroe Clark Project.

77.     ADMINCO seeks enforcement of the Monroe Clark Project Payment Bond to recover the amounts due to the Trust Funds for the Covered Work performed by the MEK ENTITIES' employees on the Monroe Clark Project, including: the amount of the Monroe Clark Project Payment Bond Claim as submitted; additional unpaid Monthly Contributions according to proof; additional interest at the rates required by the Agreements, Monroe Clark Project Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287; costs required by the Agreements, the Monroe Clark Project Payment Bond and other law, including but not limited to Labor Code § 218.5; attorneys' fees to the

extent provided by the Agreements, the Monroe Clark Project Payment Bond and other law, including but not limited to California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154; and an amount equal to 30 days extra compensation for each employee with respect to whom the MEK ENTITIES failed to remit Monthly Contributions to the Trust Funds for work performed on the Monroe Clark Project, as a penalty under California Labor Code § 203.5.

## SIXTH CLAIM FOR RELIEF

### (Jointly and Severally Against ARCH PB SURETY and GC CAL BUILDERS for Monetary Damages Through Enforcement of Hancock Project Payment Bond)

78.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 77 above as if fully set forth here.

79.     ADMINCO is informed and believes, and on that basis alleges, that GC CAL BUILDERS – in the capacity of a "direct contractor" (as defined in Civil Code § 8018) on the Hancock Project – subcontracted work to the MEK ENTITIES as "subcontractors" (as defined in Civil Code § 8046) for the performance of Covered Work on the Hancock Project.

80.     ADMINCO is informed and believes, and on that basis alleges, that ARCH PB SURETY issued a payment bond naming GC CAL BUILDERS as principal, covering work performed on the Hancock Project, including Monthly Contributions due by the MEK ENTITIES to the Trust Funds ("Hancock Project Payment Bond").

81.     ADMINCO is informed and believes, and on that basis alleges, that

1  under the terms of the Hancock Project Payment Bond ARCH PB SURETY is a
2  guarantor of the compensation that must be remitted to the Trust Funds for Covered
3  Work on the Hancock Project, including the amount due by the MEK ENTITIES to
4  the Trust Funds in Monthly Contributions. The employees of the MEK ENTITIES
5  who performed Covered Work on the Hancock Project are among the persons
6  authorized to file a payment bond claim pursuant to Civil Code §§ 9100(a)(1) and
7  (2), and 9554(b)(1) and (c). The Trust Funds are the assignees of the portion of
8  those employees' compensation payable as Monthly Contributions. The Trust Funds
9  have standing to file and enforce a payment bond claim for such compensation
10 pursuant to Civil Code §§ 8024(b) and (c), 9100(a)(2) and 9554(c). Pursuant to
11 Civil Code §§ 9300(b)(1) and 9560(e), the Trust Funds – as "Laborers" within the
12 meaning of Civil Code § 8024(b) and (c) – are exempt from the preliminary notice
13 requirements of Civil Code §§ 9300(a) and 9560(a) through (c).

14

15     82.     Under Civil Code § 8154(a) and (c), the Hancock Project Payment Bond
16 "shall be construed most strongly against the surety and in favor of all persons for
17 whose benefit the bond is given" and "the sole conditions of recovery on the bond
18 are that the claimant is a person described in [Civil Code section 8400 et seq.] or in
19 [Civil Code] Section 9100, and has not been paid the full amount of the claim."

20

21     83.     On or about March 1, 2017, ADMINCO submitted a claim against the
22 Hancock Project Payment Bond for known amounts due by the MEK ENTITIES to
23 the Trust Funds in Monthly Contributions and interest for work by the MEK
24 ENTITIES' employees on the Hancock Project, plus interest ("Hancock Project
25 Payment Bond Claim"). The Hancock Project Payment Bond Claim was thereafter
26 revised to $2,863.59, consisting of $2,705.10 in unpaid Monthly Contributions and
27 $158.49 in interest through July 18, 2017. Additional interest is due, and continues
28 to accrue, at the rates required by the Agreements, the Hancock Project Payment

1  Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code
2  § 3287.

3

4      84.    ARCH PB SURETY has not honored its obligation under the Hancock
5  Project Payment Bond to pay the Hancock Project Payment Bond Claim.
6  ADMINCO brings this claim for relief on behalf of the Trust Funds to recover the
7  Hancock Project Payment Bond Claim through the enforcement of the terms of
8  Hancock Project Payment Bond.  As the principal on the Hancock Project Payment
9  Bond, GC CAL BUILDERS is also liable for the amounts due under the terms of the
10  Hancock Project Payment Bond.

11

12      85.    ADMINCO is informed and believes, and on that basis alleges, that
13  ARCH PB SURETY's failure to pay the Hancock Project Payment Bond Claim is
14  willful.  As a result ARCH PB SURETY is required under Labor Code § 203.5 to
15  pay a penalty in an amount equal to 30 days extra compensation for each Laborer
16  Employee with respect to whom the MEK ENTITIES failed to remit Monthly
17  Contributions to the Trust Funds for work performed on the Hancock Project.

18

19      86.    ADMINCO seeks enforcement of the Hancock Project Payment Bond to
20  recover the amounts due to the Trust Funds for the Covered Work performed by the
21  MEK ENTITIES' employees on the Hancock Project, including: the amount of the
22  Hancock Project Payment Bond Claim as submitted; additional unpaid Monthly
23  Contributions according to proof; additional interest at the rates required by the
24  Agreements, Hancock Project Payment Bond and other law, including but not
25  limited to Labor Code § 218.6 and Civil Code § 3287; costs required by the
26  Agreements, the Hancock Project Payment Bond and other law, including but not
27  limited to Labor Code § 218.5; attorneys' fees to the extent provided by the
28  Agreements, the Hancock Project Payment Bond and other law, including but not

1   limited to California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and

2   8154; and an amount equal to 30 days extra compensation for each employee with

3   respect to whom the MEK ENTITIES failed to remit Monthly Contributions to the

4   Trust Funds for work performed on the Hancock Project, as a penalty under

5   California Labor Code § 203.5.

6

7   **SEVENTH CLAIM FOR RELIEF**

8   **(Jointly and Severally Against ARCH PB SURETY and**

9   **GC CAL BUILDERS for Monetary Damages Through Enforcement of**

10   **Longfellow Project Payment Bond)**

11

12   87.   ADMINCO repeats, realleges and incorporates by reference each and

13   every allegation contained in paragraphs 1 through 86 above as if fully set forth here.

14

15   88.   ADMINCO is informed and believes, and on that basis alleges, that GC

16   CAL BUILDERS – in the capacity of a "direct contractor" (as defined in Civil Code

17   § 8018) on the Longfellow Project – subcontracted work to the MEK ENTITIES as

18   "subcontractors" (as defined in Civil Code § 8046) for the performance of Covered

19   Work on the Longfellow Project.

20

21   89.   ADMINCO is informed and believes, and on that basis alleges, that

22   ARCH PB SURETY issued a payment bond naming GC CAL BUILDERS as

23   principal, covering work performed on the Longfellow Project, including Monthly

24   Contributions due by the MEK ENTITIES to the Trust Funds ("Longfellow Project

25   Payment Bond").

26

27   90.   ADMINCO is informed and believes, and on that basis alleges, that

28   under the terms of the Longfellow Project Payment Bond ARCH PB SURETY is a

1  guarantor of the compensation that must be remitted to the Trust Funds for Covered

2  Work on the Longfellow Project, including the amount due by the MEK ENTITIES

3  to the Trust Funds in Monthly Contributions.  The employees of the MEK

4  ENTITIES who performed Covered Work on the Longfellow Project are among the

5  persons authorized to file a payment bond claim pursuant to Civil Code §§

6  9100(a)(1) and (2), and 9554(b)(1) and (c).  The Trust Funds are the assignees of the

7  portion of those employees' compensation payable as Monthly Contributions.  The

8  Trust Funds have standing to file and enforce a payment bond claim for such

9  compensation pursuant to Civil Code §§ 8024(b) and (c), 9100(a)(2) and 9554(c).

10 Pursuant to Civil Code §§ 9300(b)(1) and 9560(e), the Trust Funds – as "Laborers"

11 within the meaning of Civil Code § 8024(b) and (c) – are exempt from the

12 preliminary notice requirements of Civil Code §§ 9300(a) and 9560(a) through (c).

13

14      91.    Under Civil Code § 8154(a) and (c), the Longfellow Project Payment

15 Bond "shall be construed most strongly against the surety and in favor of all persons

16 for whose benefit the bond is given" and "the sole conditions of recovery on the

17 bond are that the claimant is a person described in [Civil Code section 8400 et seq.]

18 or in [Civil Code] Section 9100, and has not been paid the full amount of the claim."

19

20      92.    On or about March 1, 2017, ADMINCO submitted a claim against the

21 Longfellow Project Payment Bond for known amounts due by the MEK ENTITIES

22 to the Trust Funds in Monthly Contributions and interest for work by the MEK

23 ENTITIES' employees on the Longfellow Project, plus interest ("Longfellow Project

24 Payment Bond Claim").  The Longfellow Project Payment Bond Claim was

25 thereafter revised to $6,687.99, consisting of $6,362.50 in unpaid Monthly

26 Contributions and $325.49 in interest through June 21, 2017.  Additional interest is

27 due, and continues to accrue, at the rates required by the Agreements, the

28 Longfellow Project Payment Bond and other law, including but not limited to Labor

1 │ Code § 218.6 and Civil Code § 3287.

2 │

3 │      93.    ARCH PB SURETY has not honored its obligation under the

4 │ Longfellow Project Payment Bond to pay the Longfellow Project Payment Bond

5 │ Claim. ADMINCO brings this claim for relief on behalf of the Trust Funds to

6 │ recover the Longfellow Project Payment Bond Claim through the enforcement of the

7 │ terms of Longfellow Project Payment Bond. As the principal on the Longfellow

8 │ Project Payment Bond, GC CAL BUILDERS is also liable for the amounts due

9 │ under the terms of the Longfellow Project Payment Bond.

10 │

11 │      94.    ADMINCO is informed and believes, and on that basis alleges, that

12 │ ARCH PB SURETY's failure to pay the Longfellow Project Payment Bond Claim is

13 │ willful. As a result ARCH PB SURETY is required under Labor Code § 203.5 to

14 │ pay a penalty in an amount equal to 30 days extra compensation for each Laborer

15 │ Employee with respect to whom the MEK ENTITIES failed to remit Monthly

16 │ Contributions to the Trust Funds for work performed on the Longfellow Project.

17 │

18 │      95.    ADMINCO seeks enforcement of the Longfellow Project Payment Bond

19 │ to recover the amounts due to the Trust Funds for the Covered Work performed by

20 │ the MEK ENTITIES' employees on the Longfellow Project, including: the amount

21 │ of the Longfellow Project Payment Bond Claim as submitted; additional unpaid

22 │ Monthly Contributions according to proof; additional interest at the rates required by

23 │ the Agreements, Longfellow Project Payment Bond and other law, including but not

24 │ limited to Labor Code § 218.6 and Civil Code § 3287; costs required by the

25 │ Agreements, the Longfellow Project Payment Bond and other law, including but not

26 │ limited to Labor Code § 218.5; attorneys' fees to the extent provided by the

27 │ Agreements, the Longfellow Project Payment Bond and other law, including but not

28 │ limited to California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and

317370v7               33

8154; and an amount equal to 30 days extra compensation for each employee with respect to whom the MEK ENTITIES failed to remit Monthly Contributions to the Trust Funds for work performed on the Longfellow Project, as a penalty under California Labor Code § 203.5.

## EIGHTH CLAIM FOR RELIEF

**(Jointly and Severally Against the STATE NATIONAL PB SURETY and GC BUILT PACIFIC for Monetary Damages Through Enforcement of University Project Payment Bond)**

96.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 95 above as if fully set forth here.

97.     ADMINCO is informed and believes, and on that basis alleges, that GC BUILT PACIFIC – in the capacity of a "direct contractor" (as defined in Civil Code § 8018) on the University Project – subcontracted work to the MEK ENTITIES as "subcontractors" (as defined in Civil Code § 8046) for the performance of Covered Work on the University Project.

98.     ADMINCO is informed and believes, and on that basis alleges, that STATE NATIONAL PB SURETY issued a payment bond naming GC BUILT PACIFIC as principal, covering work performed on the University Project, including Monthly Contributions due by the MEK ENTITIES to the Trust Funds ("University Project Payment Bond").

99.     ADMINCO is informed and believes, and on that basis alleges, that under the terms of the University Project Payment Bond STATE NATIONAL PB SURETY is a guarantor of the compensation that must be remitted to the Trust

Funds for Covered Work on the University Project, including the amount due by the MEK ENTITIES to the Trust Funds in Monthly Contributions.  The employees of the MEK ENTITIES who performed Covered Work on the University Project are among the persons authorized to file a payment bond claim pursuant to Civil Code §§ 9100(a)(1) and (2), and 9554(b)(1) and (c).  The Trust Funds are the assignees of the portion of those employees' compensation payable as Monthly Contributions. The Trust Funds have standing to file and enforce a payment bond claim for such compensation pursuant to Civil Code §§ 8024(b) and (c), 9100(a)(2) and 9554(c). Pursuant to Civil Code §§ 9300(b)(1) and 9560(e), the Trust Funds – as "Laborers" within the meaning of Civil Code § 8024(b) and (c) – are exempt from the preliminary notice requirements of Civil Code §§ 9300(a) and 9560(a) through (c).

100.    Under Civil Code § 8154(a) and (c), the University Project Payment Bond "shall be construed most strongly against the surety and in favor of all persons for whose benefit the bond is given" and "the sole conditions of recovery on the bond are that the claimant is a person described in [Civil Code section 8400 et seq.] or in [Civil Code] Section 9100, and has not been paid the full amount of the claim."

101.    On or about March 1, 2017, ADMINCO submitted a claim against the University Project Payment Bond for known amounts due by the MEK ENTITIES to the Trust Funds in Monthly Contributions and interest for work by the MEK ENTITIES' employees on the University Project, plus interest ("University Project Payment Bond Claim").  The University Project Payment Bond Claim was thereafter revised to $4,510.46, consisting of $4,243.40 in unpaid Monthly Contributions and $267.06 in interest through August 2, 2017.  Additional interest is due, and continues to accrue, at the rates required by the Agreements, the University Project Payment Bond and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

1    102.  STATE NATIONAL PB SURETY has not honored its obligation under
2  the University Project Payment Bond to pay the University Project Payment Bond
3  Claim.  ADMINCO brings this claim for relief on behalf of the Trust Funds to
4  recover the University Project Payment Bond Claim through the enforcement of the
5  terms of University Project Payment Bond.  As the principal on the University
6  Project Payment Bond, GC BUILT PACIFIC is also liable for the amounts due
7  under the terms of the University Project Payment Bond.

8

9    103.  ADMINCO is informed and believes, and on that basis alleges, that
10  STATE NATIONAL PB SURETY's failure to pay the University Project Payment
11  Bond Claim is willful.  As a result STATE NATIONAL PB SURETY is required
12  under Labor Code § 203.5 to pay a penalty in an amount equal to 30 days extra
13  compensation for each Laborer Employee with respect to whom the MEK
14  ENTITIES failed to remit Monthly Contributions to the Trust Funds for work
15  performed on the University Project.

16

17    104.  ADMINCO seeks enforcement of the University Project Payment Bond
18  to recover the amounts due to the Trust Funds for the Covered Work performed by
19  the MEK ENTITIES' employees on the University Project, including: the amount of
20  the University Project Payment Bond Claim as submitted; additional unpaid Monthly
21  Contributions according to proof; additional interest at the rates required by the
22  Agreements, University Project Payment Bond and other law, including but not
23  limited to Labor Code § 218.6 and Civil Code § 3287; costs required by the
24  Agreements, the University Project Payment Bond and other law, including but not
25  limited to Labor Code § 218.5; attorneys' fees to the extent provided by the
26  Agreements, the University Project Payment Bond and other law, including but not
27  limited to California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and
28  8154; and an amount equal to 30 days extra compensation for each employee with

1  respect to whom the MEK ENTITIES failed to remit Monthly Contributions to the

2  Trust Funds for work performed on the University Project, as a penalty under

3  California Labor Code § 203.5.

4

5  ## NINTH CLAIM FOR RELIEF

6  **(Jointly and Severally Against the AGENCY and GC SOLPAC for Monetary**

7  **Damages Through Enforcement of Taft Project Stop Payment Notice)**

8

9  105.   ADMINCO repeats, realleges and incorporates by reference each and

10  every allegation contained in paragraphs 1 through 104 above as if fully set forth

11  here.

12

13  106.   The employees of the MEK ENTITIES who performed Covered Work

14  on the Taft Project are among the persons authorized to file a stop payment notice

15  pursuant to Civil Code §§ 9100(a)(1) and (2), and 9350.  The Trust Funds are the

16  assignees of the portion of those employees' compensation payable as Monthly

17  Contributions.  The Trust Funds have standing to file and enforce a stop payment

18  notice for such compensation pursuant to Civil Code §§ 8024(b) and (c), and

19  9100(a)(2).  Pursuant to Civil Code § 9300(b)(1), the Trust Funds – as "Laborers"

20  within the meaning of Civil Code § 8024(b) and (c) – are exempt from the

21  preliminary notice requirements of Civil Code § 9300(a).

22

23  107.   On or about March 1, 2017, ADMINCO served a stop payment notice by

24  certified mail on the AGENCY, as provided for in Civil Code § 9352, in which

25  ADMINCO requested that the AGENCY withhold known amounts due for

26  delinquent Monthly Contributions and interest for Covered Work performed by the

27  MEK ENTITIES' employees on the Taft Project ("Taft Project Stop Payment

28  Notice").  The Taft Project Stop Payment Notice was thereafter revised to

$13,131.30 in in unpaid Monthly Contributions plus interest thereon at the Trust Funds' plan rate. Interest is due, and continues to accrue, at the rates required by the Collective Bargaining Agreements and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

108.   Upon receipt of the Taft Project Stop Payment Notice, the AGENCY was required under Civil Code § 9358(a) to withhold moneys due by it to GC SOLPAC in an amount sufficient to satisfy the Taft Project Stop Payment Notice.

109.   ADMINCO brings this cause of action under Civil Code § 9502(a) and (b) to recover the funds required to have been withheld by the AGENCY on the Taft Project for the benefit of the MEK ENTITIES' employees and the Trust Funds pursuant to the Taft Project Stop Payment Notice, plus interest thereon to the extent provided for by the Agreements and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

## **TENTH CLAIM FOR RELIEF**

**(Jointly and Severally Against the AGENCY and GC SOLPAC for Monetary Damages Through Enforcement of Monroe Clark Project Stop Payment Notice)**

110.   ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 109 above as if fully set forth here.

111.   The employees of the MEK ENTITIES who performed Covered Work on the Monroe Clark Project are among the persons authorized to file a stop payment notice pursuant to Civil Code §§ 9100(a)(1) and (2), and 9350. The Trust Funds are the assignees of the portion of those employees' compensation payable as Monthly

1   Contributions.  The Trust Funds have standing to file and enforce a stop payment
2   notice for such compensation pursuant to Civil Code §§ 8024(b) and (c), and
3   9100(a)(2).  Pursuant to Civil Code § 9300(b)(1), the Trust Funds – as "Laborers"
4   within the meaning of Civil Code § 8024(b) and (c) – are exempt from the
5   preliminary notice requirements of Civil Code § 9300(a).

6

7       112.   On or about March 1, 2017, ADMINCO served a stop payment notice by
8   certified mail on the AGENCY, as provided for in Civil Code § 9352, in which
9   ADMINCO requested that the AGENCY withhold known amounts due for
10  delinquent Monthly Contributions and interest for Covered Work performed by the
11  MEK ENTITIES' employees on the Monroe Clark Project ("Monroe Clark Stop
12  Payment Notice").  The Monroe Clark Stop Payment Notice was thereafter revised
13  to $10,391.04 in in unpaid Monthly Contributions plus interest thereon at the Trust
14  Funds' plan rate.  Interest is due, and continues to accrue,  at the rates required by
15  the Collective Bargaining Agreements and other law, including but not limited to
16  Labor Code § 218.6 and Civil Code § 3287.

17

18      113.   Upon receipt of the Monroe Clark Stop Payment Notice, the AGENCY
19  was required under Civil Code § 9358(a) to withhold moneys due by it to GC
20  SOLPAC in an amount sufficient to satisfy the Monroe Clark Stop Payment Notice.

21

22      114.   ADMINCO brings this cause of action under Civil Code § 9502(a) and
23  (b) to recover the funds required to have been withheld by the AGENCY on the
24  Monroe Clark Project for the benefit of the MEK ENTITIES' employees and the
25  Trust Funds pursuant to the Monroe Clark Stop Payment Notice, plus interest
26  thereon to the extent provided for by the Agreements and other law, including but
27  not limited to Labor Code § 218.6 and Civil Code § 3287.

28

317370v7                                    39

## ELEVENTH CLAIM FOR RELIEF

### (Jointly and Severally Against the AGENCY and GC CAL BUILDERS
### for Monetary Damages Through Enforcement of
### Hancock Project Stop Payment Notice)

115.   ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 114 above as if fully set forth here.

116.   The employees of the MEK ENTITIES who performed Covered Work on the Hancock Project are among the persons authorized to file a stop payment notice pursuant to Civil Code §§ 9100(a)(1) and (2), and 9350.  The Trust Funds are the assignees of the portion of those employees' compensation payable as Monthly Contributions.  The Trust Funds have standing to file and enforce a stop payment notice for such compensation pursuant to Civil Code §§ 8024(b) and (c), and 9100(a)(2).  Pursuant to Civil Code § 9300(b)(1), the Trust Funds – as "Laborers" within the meaning of Civil Code § 8024(b) and (c) – are exempt from the preliminary notice requirements of Civil Code § 9300(a).

117.   On or about March 1, 2017, ADMINCO served a stop payment notice by certified mail on the AGENCY, as provided for in Civil Code § 9352, in which ADMINCO requested that the AGENCY withhold known amounts due for delinquent Monthly Contributions and interest for Covered Work performed by the MEK ENTITIES' employees on the Hancock Project ("Hancock Project Stop Payment Notice").  The Hancock Project Stop Payment Notice was thereafter revised to $2,863.59, consisting of $2,705.10 in unpaid Monthly Contributions and $158.49 in interest through July 18, 2017.  Interest continues to accrue at the rates required by the Collective Bargaining Agreements and other law, including but not limited to

Labor Code § 218.6 and Civil Code § 3287.

118.   Upon receipt of the Hancock Project Stop Payment Notice, the AGENCY was required under Civil Code § 9358(a) to withhold moneys due by it to GC CAL BUILDERS in an amount sufficient to satisfy the Hancock Project Stop Payment Notice.

119.   ADMINCO brings this cause of action under Civil Code § 9502(a) and (b) to recover the funds required to have been withheld by the AGENCY on the Hancock Project for the benefit of the MEK ENTITIES' employees and the Trust Funds pursuant to the Hancock Project Stop Payment Notice, plus interest thereon to the extent provided for by the Agreements and other law, including but not limited to Labor Code § 218.6 and Civil Code § 3287.

### TWELFTH CLAIM FOR RELIEF

**(A Jointly and Severally Against the AGENCY and GC CAL BUILDERS**
**for Monetary Damages Through Enforcement of**
**Longfellow Project Stop Payment Notice)**

120.   ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 119 above as if fully set forth here.

121.   The employees of the MEK ENTITIES who performed Covered Work on the Longfellow Project are among the persons authorized to file a stop payment notice pursuant to Civil Code §§ 9100(a)(1) and (2), and 9350. The Trust Funds are the assignees of the portion of those employees' compensation payable as Monthly Contributions. The Trust Funds have standing to file and enforce a stop payment

1   notice for such compensation pursuant to Civil Code §§ 8024(b) and (c), and
2   9100(a)(2).  Pursuant to Civil Code § 9300(b)(1), the Trust Funds – as "Laborers"
3   within the meaning of Civil Code § 8024(b) and (c) – are exempt from the
4   preliminary notice requirements of Civil Code § 9300(a).

5

6   122.   On or about March 1, 2017, ADMINCO served a stop payment notice by
7   certified mail on the AGENCY, as provided for in Civil Code § 9352, in which
8   ADMINCO requested that the AGENCY withhold known amounts due for
9   delinquent Monthly Contributions and interest for Covered Work performed by the
10   MEK ENTITIES' employees on the Longfellow Project ("Longfellow Project Stop
11   Payment Notice").  The Longfellow Project Stop Payment Notice was thereafter
12   revised to $6,687.99, consisting of $6,362.50 in unpaid Monthly Contributions and
13   $325.49 in interest through June 21, 2017.  Interest continues to accrue at the rates
14   required by the Collective Bargaining Agreements and other law, including but not
15   limited to Labor Code § 218.6 and Civil Code § 3287.

16

17   123.   Upon receipt of the Longfellow Project Stop Payment Notice, the
18   AGENCY was required under Civil Code § 9358(a) to withhold moneys due by it to
19   GC CAL BUILDERS in an amount sufficient to satisfy the Longfellow Project Stop
20   Payment Notice.

21

22   124.   ADMINCO brings this cause of action under Civil Code § 9502(a) and
23   (b) to recover the funds required to have been withheld by the AGENCY on the
24   Longfellow Project for the benefit of the MEK ENTITIES' employees and the Trust
25   Funds pursuant to the Longfellow Project Stop Payment Notice, plus interest thereon
26   to the extent provided for by the Agreements and other law, including but not limited
27   to Labor Code § 218.6 and Civil Code § 3287.

28

## THIRTEENTH CLAIM FOR RELIEF

### (Jointly and Severally Against the AGENCY and GC BUILT PACIFIC
### for Monetary Damages Through Enforcement of
### University Project Stop Payment Notice)

125.   ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 124 above as if fully set forth here.

126.   The employees of the MEK ENTITIES who performed Covered Work on the University Project are among the persons authorized to file a stop payment notice pursuant to Civil Code §§ 9100(a)(1) and (2), and 9350.  The Trust Funds are the assignees of the portion of those employees' compensation payable as Monthly Contributions.  The Trust Funds have standing to file and enforce a stop payment notice for such compensation pursuant to Civil Code §§ 8024(b) and (c), and 9100(a)(2).  Pursuant to Civil Code § 9300(b)(1), the Trust Funds – as "Laborers" within the meaning of Civil Code § 8024(b) and (c) – are exempt from the preliminary notice requirements of Civil Code § 9300(a).

127.   On or about March 1, 2017, ADMINCO served a stop payment notice by certified mail on the AGENCY, as provided for in Civil Code § 9352, in which ADMINCO requested that the AGENCY withhold known amounts due for delinquent Monthly Contributions and interest for Covered Work performed by the MEK ENTITIES' employees on the University Project ("University Project Stop Payment Notice").  The University Project Stop Payment Notice was thereafter revised to $4,510.46, including $4,243.40 in unpaid Monthly Contributions and $267.06 in interest through August 2, 2017.  Interest continues to accrue at the rates required by the Collective Bargaining Agreements and other law, including but not

1  limited to Labor Code § 218.6 and Civil Code § 3287.

2

3  128.   Upon receipt of the University Project Stop Payment Notice, the

4  AGENCY was required under Civil Code § 9358(a) to withhold moneys due by it to

5  GC BUILT PACIFIC in an amount sufficient to satisfy the University Project Stop

6  Payment Notice.

7

8  129.   ADMINCO brings this cause of action under Civil Code § 9502(a) and

9  (b) to recover the funds required to have been withheld by the AGENCY on the

10  University Project for the benefit of the MEK ENTITIES' employees and the Trust

11  Funds pursuant to the University Project Stop Payment Notice, plus interest thereon

12  to the extent provided for by the Agreements and other law, including but not limited

13  to Labor Code § 218.6 and Civil Code § 3287.

14

15  **FOURTEENTH CLAIM FOR RELIEF**

16  **(Jointly and Severally Against the MEK ENTITIES for Specific Performance of**

17  **Obligation to Produce Records for Audit)**

18

19  130.   ADMINCO repeats, realleges and incorporates by reference each and

20  every allegation contained in paragraphs 1 through 129 above as if fully set forth

21  here.

22

23  131.   ADMINCO requests that the Court exercise its authority under

24  29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the MEK ENTITIES to comply

25  with their obligation under the Agreements and ERISA to fully produce their books

26  and records in order for ADMINCO to complete an audit to determine if additional

27  amounts are due.

28

317370v7                                    44

1    132.   An award of attorneys' fees and costs is provided for by Agreements and

2    under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or

3    (g)(2)).

4

5                          **FIFTEENTH CLAIM FOR RELIEF**

6                    **(Jointly and Severally Against the MEK ENTITIES for**

7    **Injunctive Relief Compelling Submission of Fringe Benefit Contributions to**

8                                **Employee Benefit Plans)**

9

10    133.   ADMINCO repeats, realleges and incorporates by reference each and

11    every allegation contained in paragraphs 1 through 132 above as if fully set forth

12    here.

13

14    134.   The MEK ENTITIES have repeatedly failed to timely submit Monthly

15    Reports and Monthly Contributions.

16

17    135.   By reason of the MEK ENTITIES' failure to comply with their Monthly

18    Reporting and Contribution obligations, the Trust Funds, its participants and/or its

19    beneficiaries have suffered and will continue to suffer hardship and actual and

20    impending irreparable injury and damage for at least the following reasons.  First,

21    the Trust Funds must provide credit each month to participants and beneficiaries,

22    including the MEK ENTITIES' employees, toward eligibility for fringe benefits

23    (such as health insurance and pensions) based on the number of hours they worked,

24    which is determined from Monthly Reports.  Second, the amount of benefits payable

25    to all participants and beneficiaries for health insurance and pension claims,

26    including those employed by the MEK ENTITIES, is actuarially determined on the

27    basis of funds projected to be received from contributing employers (including the

28    MEK ENTITIES).  Third, health insurance is not provided to participants and

317370v7                                        45

1    beneficiaries, including the MEK ENTITIES' employees, after a certain period of

2    non-payment of Monthly Contributions on their behalf.  Fourth, vacation pay, which

3    is distributed by the Construction Laborers Vacation Trust for Southern California

4    (one of the Trust Funds), is not paid to employees, including the MEK ENTITIES'

5    employees, for hours of work for which their employer has not submitted Monthly

6    Contributions.  Fifth, the Trust Funds have a legal obligation to take steps to collect

7    amounts due by delinquent employers and thus the MEK ENTITIES' ongoing

8    delinquency results in an ongoing drain on Trust Funds resources.  Sixth, the Trust

9    Funds lose investment income on late-paid and unpaid Monthly Contributions.

10

11        136.   The Trust Funds have no adequate or speedy remedy at law.  They

12   therefore request that this Court exercise its authority under sections 502(g)(2)(E)

13   and 502(a)(3) of ERISA (29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3)) to issue

14   preliminary and permanent injunctive relief ordering the MEK ENTITIES to comply

15   with their obligations under the Agreements and section 515 of ERISA (29 U.S.C.

16   § 1145) to fully disclose their employees' Covered Work on their Monthly Reports,

17   itemized by project, and timely submit them each month with full payment of the

18   Monthly Contributions due.

19

20        137.   An award of attorneys' fees and costs is provided for by Agreements and

21   under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or

22   (g)(2)).

23

24

25

26

27

28   ///

**WHEREFORE, ADMINCO prays for judgment as follows:**

<u>ON ADMINCO'S FIRST CLAIM FOR RELIEF</u>

[Jointly and Severally Against the MEK ENTITIES for Monetary Damages

of Unpaid Fringe Benefit Contributions and Related Damages

Due to Employee Benefit Plans]

A.    For $37,937.47 in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

B.    For $2,274.61 in interest through September 19, 2017 on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by the Federal Reserve Board of San Francisco, California, plus such additional interest that has or does hereafter accrue from September 19, 2017, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B).

C.    For $8,979.47 in liquidated damages for each month of unpaid or late-paid Monthly Contributions at, for each of the Trust Funds separately, the greater of 20% or $25 (except with respect to the Laborers Contract Administration Trust Fund for Southern California, for which liquidated damages are sought at the greater 10% or $20), as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

D.    For $3,200.00 in audit fees, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(E).

E.    Minus a credit of $1,331.33 on the MEK ENTITIES' account with the Trust Funds.

1       F.     For, according to proof, any additional Monthly Contributions, interest,

2   liquidated damages, audit fees, fees incurred by the Trust Funds as a result of the

3   submission of checks not honored by the bank upon which they were drawn, and

4   amounts owed as a result work performed by any subcontractors of the MEK

5   ENTITIES (or lower-tier subcontractors) determined to be due, pursuant to the

6   Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.

7

8       G.     For reasonable attorneys' fees and costs of suit, as required by the

9   Agreements and 29 U.S.C. § 1132(g)(2)(D).

10

11       H.     For such other relief that this Court deems appropriate, pursuant to any

12   authority of the Court, including but not limited to the authority established by 29

13   U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

14

15   <div align="center">ON ADMICO'S SECOND CLAIM FOR RELIEF</div>

16   <div align="center">[Jointly and Severally Against the MEK ENTITIES and</div>

17   <div align="center">MANAGING AGENTS for Damages for Breach of Fiduciary Duties]</div>

18

19       A.     For declaratory relief adjudging:

20

21         A.1.  That amounts deducted from employee pay by the MEK

22   ENTITIES that came due to the Trust Funds but were not paid to the TRUST

23   FUNDS, plus additional deducted amounts and interest at the Trust Funds' plan rate

24   according to proof, are assets of the Trust Funds;

25

26         A.2.  That the MEK ENTITIES and MANAGING AGENTS are

27   fiduciaries of the Trust Funds with respect to those assets within the meaning of

28   ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A);

1

2      A.3.  That the MEK ENTITIES and the MANAGING AGENTS

3   breached their respective fiduciary duties to the Trust Funds with respect to those

4   assets within the meaning of ERISA §§ 404(a)(1)(A), (B) and (D) and 406(a) and (b),

5   29 U.S.C. §§ 1104(a)(1)(A), (B) and (D) and 1106(a) and (b);

6

7      A.4.  That the MEK ENTITIES and MANAGING AGENTS are each

8   liable for the breaches of the others under ERISA § 405, 29 U.S.C. § 1105; and

9

10     A.5.  That pursuant to ERISA § 409, 29 U.S.C. § 1109, the MEK

11  ENTITIES and MANAGING AGENTS are liable to the Trust Funds for the losses

12  sustained as a result of the breaches, must restore to the Trust Funds any profits made

13  through the use of Trust Funds' assets, and are subject to such other equitable or

14  remedial relief deemed appropriate by this Court.

15

16     B.     For an order directing the MEK ENTITIES and MANAGING AGENTS

17  to account for all assets of the Trust Funds that have not been received by the Trust

18  Funds as a result of the breaches, including all profits made through the use of such

19  assets, pursuant to ERISA §§ 404(a)(1)(A), (B) and (D) and 406(a) and (b), 29 U.S.C.

20  §§ 1104(a)(1)(A), (B) and (D) and 1106(a) and (b).

21

22     C.     For monetary damages jointly and severally against the MEK ENTITIES

23  and MANAGING AGENTS in the amount of the Known Delinquency ($51,060.22),

24  plus, according to proof, any additional losses sustained by the Trust Funds as a result

25  of the breaches of the MEK ENTITIES and MANAGING AGENTS, including any

26  additional deducted and unpaid amounts, the profits made through the use of the

27  Trust Funds' assets, and interest, pursuant to ERISA § 409, 29 U.S.C. § 1109.

28

1    D.    For reasonable attorneys' fees and costs of suit, pursuant to ERISA

2    § 502(g)(1), 29 U.S.C. § 1132(g)(1).

3

4    E.    For such other and further relief that this Court deems appropriate,

5    pursuant to any authority of the Court, including, but not limited to, the authority

6    established by 29 U.S.C. §§ 1132 (a)(3)(B) and (g)(2)(E).

7

8              ON ADMINCO'S THIRD CLAIM FOR RELIEF

9         [Against the LICENSE BOND SURETY for Monetary Damages

10             Through Enforcement of the License Bond]

11

12    A.    For enforcement of the License Bond pursuant to California Business

13    and Professions Code §§ 7071.5(e) and 7071.11(a).

14

15    B.    For the penal sum of the License Bond, plus interest at the rate or rates

16    required by law, including California Labor Code § 218.6, from the respective days

17    the Monthly Contributions providing the basis for the License Bond Claim became

18    due.

19

20    C.    For reasonable attorneys' fees and costs.

21

22    D.    For such other relief that this Court deems appropriate.

23

24              ON ADMINCO'S FOURTH CLAIM FOR RELIEF

25         [Jointly and Severally Against the LIBERTY PB SURETY and GC SOLPAC

26         for Monetary Damages Through Enforcement of the Taft Project Payment Bond]

27

28    A.    For $13,131.30 in unpaid Monthly Contributions due to the Trust Funds

1   guaranteed by the Payment Bond for Covered Work performed by the MEK

2   ENTITIES' employees on the Taft Project.

3

4       B.      For interest on the unpaid Monthly Contributions at the rates required by

5   the Agreements, the Taft Project Payment Bond and other law, including but not

6   limited to California Labor Code § 218.6 and California Civil Code § 3287.

7

8       C.      For, according to proof, additional amounts in Monthly Contributions

9   and interest owed to the Trust Funds by the MEK ENTITIES for Covered Work on

10  the Taft Project.

11

12      D.      For costs required by the Agreements, the Taft Project Payment Bond

13  and other law, including but not limited to California Labor Code § 218.5 and

14  California Civil Code § 9364(a).

15

16      E.      For reasonable attorneys' fees to the extent recoverable pursuant to the

17  Agreements, the Taft Project Payment Bond and other law, including California

18  Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154.

19

20      F.      For an amount equal to 30 days extra compensation for each employee

21  with respect to whom the MEK ENTITIES failed to submit Monthly Contributions to

22  the Trust Funds for Covered Work performed on the Taft Project, as a penalty under

23  California Labor Code § 203.5.

24

25      G.      For such other relief that this Court deems appropriate.

26

27

28  ///

317370v7                          2

## ON ADMINCO'S FIFTH CLAIM FOR RELIEF

[Jointly and Severally Against the LIBERTY PB SURETY and GC SOLPAC

for Monetary Damages Through Enforcement of the

Monroe Clark Project Payment Bond]

      A.     For $10,391.04 in unpaid Monthly Contributions due to the Trust Funds guaranteed by the Monroe Clark Project Payment Bond for Covered Work performed by the MEK ENTITIES' employees on the Monroe Clark Project .

      B.     For interest on the unpaid Monthly Contributions at the rates required by the Agreements, the Monroe Clark Project Payment Bond and other law, including but not limited to California Labor Code § 218.6 and California Civil Code § 3287.

      C.     For, according to proof, additional amounts in Monthly Contributions and interest owed to the Trust Funds by the MEK ENTITIES for Covered Work on the Monroe Clark Project.

      D.     For costs required by the Agreements, the Monroe Clark Project Payment Bond and other law, including but not limited to California Labor Code § 218.5 and California Civil Code § 9364(a).

      E.     For reasonable attorneys' fees to the extent recoverable pursuant to the Agreements, the Monroe Clark Project Payment Bond and other law, including California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154.

      F.     For an amount equal to 30 days extra compensation for each employee with respect to whom the MEK ENTITIES failed to submit Monthly Contributions to the Trust Funds for Covered Work performed on the Monroe Clark Project, as a

1    penalty under California Labor Code § 203.5.

2

3        G.     For such other relief that this Court deems appropriate.

4

5            ON ADMINCO'S SIXTH CLAIM FOR RELIEF

6    [Jointly and Severally Against the ARCH PB SURETY and GC CAL BUILDERS for

7    Monetary Damages Through Enforcement of the Hancock Project Payment Bond]

8

9        A.     For $2,705.10 in unpaid Monthly Contributions due to the Trust Funds

10   guaranteed by the Hancock Project Payment Bond for Covered Work performed by

11   the MEK ENTITIES' employees on the Hancock Project.

12

13       B.     For $158.49 in interest on the unpaid Monthly Contributions through

14   July 18, 2017.

15

16       C.     For additional interest from July 18, 2017 at the rates required by the

17   Agreements, the Hancock Project Payment Bond and other law, including but not

18   limited to California Labor Code § 218.6 and California Civil Code § 3287.

19

20       D.     For, according to proof, additional amounts in Monthly Contributions

21   and interest owed to the Trust Funds by the MEK ENTITIES for Covered Work on

22   the Hancock Project.

23

24       E.     For costs required by the Agreements, the Hancock Project Payment

25   Bond and other law, including but not limited to California Labor Code § 218.5 and

26   California Civil Code § 9364(a).

27

28       F.     For reasonable attorneys' fees to the extent recoverable pursuant to the

1   Agreements, the Hancock Project Payment Bond and other law, including California

2   Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154.

3

4       G.    For an amount equal to 30 days extra compensation for each employee

5   with respect to whom the MEK ENTITIES failed to submit Monthly Contributions to

6   the Trust Funds for Covered Work performed on the Hancock Project, as a penalty

7   under California Labor Code § 203.5.

8

9       H.    For such other relief that this Court deems appropriate.

10

11   <center>ON ADMINCO'S SEVENTH CLAIM FOR RELIEF</center>

12   <center>[Jointly and Severally Against the ARCH PB SURETY and GC CAL BUILDERS</center>

13   <center>for Monetary Damages Through Enforcement</center>

14   <center>of the Longfellow ProjectPayment Bond]</center>

15

16       A.    For $6,362.50 in unpaid Monthly Contributions due to the Trust Funds

17   guaranteed by the Longfellow Project Payment Bond for Covered Work performed

18   by the MEK ENTITIES' employees on the Longfellow Project.

19

20       B.    For $325.49 in interest on the unpaid Monthly Contributions through

21   June 21, 2017.

22

23       C.    For additional interest from June 21, 2017 at the rates required by the

24   Agreements, the Longfellow Project Payment Bond and other law, including but not

25   limited to California Labor Code § 218.6 and California Civil Code § 3287.

26

27       D.    For, according to proof, additional amounts in Monthly Contributions

28   and interest owed to the Trust Funds by the MEK ENTITIES for Covered Work on

1 │ the Longfellow Project.

2

3 │       E.     For costs required by the Agreements, the Longfellow Project Payment

4 │ Bond and other law, including but not limited to California Labor Code § 218.5 and

5 │ California Civil Code § 9364(a).

6

7 │       F.     For reasonable attorneys' fees to the extent recoverable pursuant to the

8 │ Agreements, the Longfellow Project Payment Bond and other law, including

9 │ California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154.

10

11 │       G.     For an amount equal to 30 days extra compensation for each employee

12 │ with respect to whom the MEK ENTITIES failed to submit Monthly Contributions to

13 │ the Trust Funds for Covered Work performed on the Longfellow Project, as a penalty

14 │ under California Labor Code § 203.5.

15

16 │       H.     For such other relief that this Court deems appropriate.

17

18 │ <u>ON ADMINCO'S EIGHTH CLAIM FOR RELIEF</u>

19 │ [Against the STATE NATIONAL PB SURETY and GC BUILT PACIFIC for

20 │ Monetary Damages Through Enforcement of the University Project Payment Bond]

21

22 │       A.     For $4,243.40 in unpaid Monthly Contributions due to the Trust Funds

23 │ guaranteed by the University Project Payment Bond for Covered Work performed by

24 │ the MEK ENTITIES' employees on the University Project.

25

26 │       B.     For $267.06 in interest on the unpaid Monthly Contributions through

27 │ August 2, 2017.

28

1    C.    For additional interest from August 2, 2017 at the rates required by the
2  Agreements, the University Project Payment Bond and other law, including but not
3  limited to California Labor Code § 218.6 and California Civil Code § 3287.

5    D.    For, according to proof, additional amounts in Monthly Contributions
6  and interest owed to the Trust Funds by the MEK ENTITIES for Covered Work on
7  the University Project.

9    E.    For costs required by the Agreements, the University Project Payment
10  Bond and other law, including but not limited to California Labor Code § 218.5 and
11  California Civil Code § 9364(a).

13    F.    For reasonable attorneys' fees to the extent recoverable pursuant to the
14  Agreements, the University Project Payment Bond and other law, including
15  California Labor Code § 218.5 and Civil Code §§ 9554(b), 9564(c) and 8154.

17    G.    For an amount equal to 30 days extra compensation for each employee
18  with respect to whom the MEK ENTITIES failed to submit Monthly Contributions to
19  the Trust Funds for Covered Work performed on the University Project, as a penalty
20  under California Labor Code § 203.5.

22    H.    For such other relief that this Court deems appropriate.

24                    ON ADMINCO'S NINTH CLAIM FOR RELIEF
25      [Jointly and Severally Against the AGENCY and GC SOLPAC for Monetary
26          Damages Through Enforcement of the Taft Project Stop Payment Notice]

28    A.    For $13,131.30 in Monthly Contributions.

1        B.     For interest on the unpaid Monthly Contributions at the rate or rates

2  required by law, including pursuant to Labor Code § 218.6, Civil Code § 3287 or the

3  Trust Funds' plan rate, whichever is greatest.

4

5        C.     For, according to proof, additional amounts in Monthly Contributions

6  and interest owed to the Trust Funds by the MEK ENTITIES for Covered Work on

7  the Taft Project.

8

9        D.     For costs of suit.

10

11       E.     For such other relief that this Court deems appropriate.

12

13                ON ADMINCO'S TENTH CLAIM FOR RELIEF

14       [Jointly and Severally Against the AGENCY and GC SOLPAC for Monetary

15  Damages Through Enforcement of the Monroe Clark Project Stop Payment Notice]

16

17        A.     For $10,391.04 in Monthly Contributions.

18

19        B.     For interest on the unpaid Monthly Contributions at the rate or rates

20  required by law, including pursuant to Labor Code § 218.6, Civil Code § 3287 or the

21  Trust Funds' plan rate, whichever is greatest.

22

23        C.     For, according to proof, additional amounts in Monthly Contributions

24  and interest owed to the Trust Funds by the MEK ENTITIES for Covered Work on

25  the Monroe Clark Project.

26

27        D.     For costs of suit.

28

1       E.      For such other relief that this Court deems appropriate.

2

3               <u>ON ADMINCO'S ELEVENTH CLAIM FOR RELIEF</u>

4       [Jointly and Severally Against the AGENCY and GC CAL BUILDERS

5             for Monetary Damages Through Enforcement of the

6                  Hancock Project Stop Payment Notice]

7

8       A.      For $2,705.10 in Monthly Contributions.

9

10       B.      For $158.49 in interest on the unpaid Monthly Contributions through

11 July 18, 2017.

12

13       C.      For additional interest from July 18, 2017 at the rate or rates required by

14 law, including pursuant to Labor Code § 218.6, Civil Code § 3287 or the Trust Funds'

15 plan rate, whichever is greatest.

16

17       D.      For, according to proof, additional amounts in Monthly Contributions

18 and interest owed to the Trust Funds by the MEK ENTITIES for Covered Work on

19 the Hancock Project.

20

21       E.      For costs of suit.

22

23       F.      For such other relief that this Court deems appropriate.

24

25

26

27

28 ///

## ON ADMINCO'S TWELFTH CLAIM FOR RELIEF

[Jointly and Severally Against the AGENCY and GC CAL BUILDERS
for Monetary Damages Through Enforcement of the Longfellow Project Stop
Payment Notice]

A.    For $6,362.50 in Monthly Contributions.

B.    For $325.49 in interest on the unpaid Monthly Contributions through
June 21, 2017.

C.    For additional interest from June 21, 2017 at the rate or rates required by
law, including pursuant to Labor Code § 218.6, Civil Code § 3287 or the Trust Funds'
plan rate, whichever is greatest.

D.    For, according to proof, additional amounts in Monthly Contributions
and interest owed to the Trust Funds by the MEK ENTITIES for Covered Work on
the Longfellow Project.

E.    For costs of suit.

F.    For such other relief that this Court deems appropriate.

## ON ADMINCO'S THIRTEENTH CLAIM FOR RELIEF

[Jointly and Severally Against the AGENCY and GC BUILT PACIFIC for Monetary
Damages Through Enforcement of the University Project Stop Payment Notice]

A.    For $4,243.40 in Monthly Contributions.

1      B.     For $267.06 in interest on the unpaid Monthly Contributions through

2   August 2, 2017.

3

4      C.     For additional interest from August 2, 2017 at the rate or rates required

5   by law, including pursuant to Labor Code § 218.6, Civil Code § 3287 or the Trust

6   Funds' plan rate, whichever is greatest.

7

8      D.     For, according to proof, additional amounts in Monthly Contributions

9   and interest owed to the Trust Funds by the MEK ENTITIES for Covered Work on

10   the University Project.

11

12      E.     For costs of suit.

13

14      F.     For such other relief that this Court deems appropriate.

15

16                ON ADMINCO'S FOURTEENTH CLAIM FOR RELIEF

17                  [Jointly and Severally Against the MEK ENTITIES for Specific

18                  Performance of Obligation to Produce Records for Audit]

19

20      A.     For the issuance of injunctive relief pursuant to the Agreements and

21   29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the MEK ENTITIES and their

22   managing officers, managing employees, agents and successors, including the

23   MANAGING AGENTS, as well as all those in active concert or participation with

24   any one or more of them, to submit to an audit of the MEK ENTITIES' records

25   (including both MEK and MEK GOV), to fully cooperate with ADMINCO with

26   respect to the audit in order for ADMINCO to determine the total amount due to the

27   Trust Funds by the MEK ENTITIES, and, specifically, to produce to ADMINCO the

28   following payroll and business records – and any other records determined by

317370v7                                11

1  ADMINCO to be necessary to conduct a full audit – for inspection, examination and
2  copying:

3

4       A.1.   All of the MEK ENTITIES' payroll and employee records, as well
5  as any other records that might be relevant to a determination of the work performed
6  by the MEK ENTITIES, their employees, their subcontractors, their lower-tier
7  subcontractors and the employees of the MEK ENTITIES' subcontractors and lower-
8  tier subcontractors, including but not limited to payroll journals, employee earnings
9  records, certified payroll records, payroll check books and stubs, cancelled payroll
10 checks, payroll time cards and state and federal tax returns (and all other state and
11 federal tax records), as well as labor distribution journals and any other records that
12 might be relevant to an identification of the employees who performed work for the
13 MEK ENTITIES, their subcontractors or lower-tier subcontractors, or which might be
14 relevant to a determination of the projects on which the MEK ENTITIES, their
15 employees, their subcontractors, lower-tier subcontractors or the employees of their
16 subcontractors or lower-tier subcontractors performed work, including any records
17 that provide the names, addresses, Social Security numbers, project classification or
18 the number of hours worked by any one or more employee;

19

20      A.2.   All of the MEK ENTITIES' project files for each contract, project
21 or project on which the MEK ENTITIES, their employees, their subcontractors, their
22 lower-tier subcontractors or the employees of their subcontractors or lower-tier
23 subcontractors worked, including but not limited to all correspondence, agreements
24 and contracts between the MEK ENTITIES and any general contractor,
25 subcontractor, owner, builder or developer, as well as all field records, project
26 records, notices, project logs, supervisors' diaries and notes, employees' diaries and
27 notes, memoranda, releases and any other records that relate to the supervision of the
28 MEK ENTITIES' employees, their subcontractors, their lower-tier subcontractors or

1    the employees of their subcontractors and lower-tier subcontractors, or the projects on

2    which the MEK ENTITIES, their employees, their subcontractors, their lower-tier

3    subcontractors or the employees of their subcontractors or lower-tier subcontractors

4    performed work;

5

6          A.3.   All of the MEK ENTITIES' records related to cash receipts,

7    including but not limited to the MEK ENTITIES' cash receipts journals, accounts

8    receivable journals, accounts receivable subsidiary ledgers and billing invoices for all

9    contracts, projects and projects on which the MEK ENTITIES, their employees, their

10   subcontractors, their lower-tier subcontractors or the employees of their

11   subcontractors or lower-tier subcontractors performed work;

12

13         A.4.   All of the MEK ENTITIES' bank statements, including but not

14   limited to those for all checking, savings and investment accounts;

15

16         A.5.   All of the MEK ENTITIES' records related to disbursements,

17   including but not limited to vendors' invoices, cash disbursement journals, accounts

18   payable journals, check registers and all other records which indicate disbursements;

19

20         A.6.   All collective bargaining agreements between the MEK

21   ENTITIES and any trade union, and all records of contributions by the MEK

22   ENTITIES to any trade union trust fund; and

23

24         A.7.   All records related to the formation, licensing, renewal or

25   operation of the MEK ENTITIES.

26

27       B.   For reasonable attorneys' fees and costs of suit, as required by the

28   Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

1   C.   For such other relief that this Court deems appropriate, pursuant to any

2   authority of the Court, including but not limited to the authority established by 29

3   U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3).

4

5   ON ADMINCO'S FIFTEENTH CLAIM FOR RELIEF

6   [Jointly and Severally Against the MEK ENTITIES for Injunctive Relief Compelling

7   Submission of Fringe Benefit Contributions to Employee Benefit Plans]

8

9   A.   For the issuance of injunctive relief pursuant to the Agreements and

10  29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the MEK ENTITIES and their

11  managing officers, managing employees, agents and successors, including the

12  MANAGING AGENTS, as well as all those in active concert or participation with

13  any one or more of them, to deliver, or cause to be delivered to the Trust Funds:

14

15  A.1. All past due monthly fringe benefit contribution report forms due

16  by the MEK ENTITIES to the Trust Funds, fully completed to indicate hours of work

17  performed by the MEK ENTITIES' employees for which fringe benefit contributions

18  are due by the MEK ENTITIES and the corresponding amounts of fringe benefit

19  contributions due by the MEK ENTITIES to the Trust Funds, if any, or, if no such

20  hours of work were performed for a given month, an indication on the report form of

21  that fact.

22

23  A.2. No later than 4:30 p.m. on the 20th day of each month for the

24  duration of the Agreements:

25

26  A.2(a).   Truthfully and accurately completed Monthly Report(s)

27  covering all of the MEK ENTITIES' accounts with the Trust Funds in existence at

28  the time of delivery, collectively identifying all persons for whom Monthly

317370v7                                    14

1    Contributions are owed to the Trust Funds for the previous month and their Social

2    Security numbers, and, itemized by person and project, the hours of work performed

3    for which Monthly Contributions are due;

4

5                A.2(b).  An affidavit or declaration from a managing officer or

6    other managing agent of the MEK ENTITIES attesting under penalty of perjury to the

7    completeness, truthfulness and accuracy of each Monthly Report submitted; and

8

9                A.2(c).  A cashier's check or checks made payable to the

10   "Construction Laborers Trust Funds for Southern California" totaling the full amount

11   of Monthly Contributions due to the Trust Funds for the previous month (as set forth

12   on the Monthly Report(s) submitted).

13

14        B.    For reasonable attorneys' fees and costs of suit, as required by the

15   Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

16

17        C.    For such other relief that this Court deems appropriate, pursuant to any

18   authority of the Court, including but not limited to the authority established by

19   29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

20

21   DATED:  September 21, 2017              REICH, ADELL & CVITAN
                                            A Professional Law Corporation
22

23                                          By: _____/s/_____

24                                               PETER A. HUTCHINSON
                                                 Attorneys for Plaintiff
25

26

27

28

317370v7                             15